DESCHAINE v ST GERMAIN

Docket No. 244135. Submitted May 20, 2003, at Marquette. Decided May 29, 2003, at 9:05 A.M.

Robert Deschaine filed a petition for temporary guardianship of his nine-year-old granddaughter, Tiffany Deschaine, in the Menominee Circuit Court, Family Division, after his daughter, Julie Deschaine, Tiffany's mother, died. The court, William A. Hupy, J., granted Robert a temporary guardianship of Tiffany; Robert moved for permanent guardianship and custody of Tiffany. Curtis D. St. Germain, Tiffany's biological father who shared joint legal custody of Tiffany, but not physical custody, objected to the temporary guardianship. The court, Mary B. Barglind, J., concluded that Robert did not satisfy any of the requirements contained in MCL 700.5204(2)(b) to obtain a guardianship, either temporary or permanent, over Tiffany, and that therefore Robert lacked standing to petition for permanent custody of Tiffany. Thus, the court granted St. Germain's motion to dismiss Robert's petition for custody and alternative request for grandparent visitation. Robert Deschaine appealed.

The Court of Appeals *held*:

MCL 700.5204(2)(b) provides that a court may appoint a guardian of an unmarried minor if the parent or parents "permit" the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with the minor's parent or parents when the petition is filed. Under the plain language of the statute and the facts of the case, the circuit court did not err in dismissing the petition for custody. The term "permit" as used in the statute must be read in the present tense. Here, at the time the guardianship issue arose when Julie Deschaine died, Julie was not permitting Tiffany to reside with Robert Deschaine, Tiffany was living with Julie. The fact that Tiffany had lived with Robert on occasions in the past, or that Julie may have expressed a future intent that Tiffany live with Robert was irrelevant.

Affirmed.

GUARDIAN AND WARD — TEMPORARY GUARDIANSHIP.

The term "permit," as used in the statute authorizing court appointment of a guardian for an unmarried minor where the minor

resides with another person, is not ambiguous and must be read and applied in the present tense (MCL 700.5204[2][b]).

*Lynette L. Erickson* for the defendant.

*Coggins & Wolfe* (by *Kim A. Coggins*) for the appellant.

Before: SMOLENSKI, P.J., and GRIFFIN and O'CONNELL, JJ.

O'CONNELL, J. Appellant Robert Deschaine appeals as of right the circuit court's order stating that he did not meet the requirements of MCL 700.5204(2)(b) to obtain guardianship of his granddaughter. We affirm.

### I. FACTS AND PROCEEDINGS

Plaintiff Julie Deschaine is the mother of nine-year-old Tiffany Deschaine. Defendant Curtis Dominique St. Germain is Tiffany's biological father, and Robert Deschaine is Julie's father and Tiffany's grandfather. The central issue in this case arose when Julie died. At the time of her mother's death, Tiffany resided with her mother. Tiffany's father had joint legal custody and parenting time,[1] while her mother had sole physical custody.

Julie had asked her father and mother, Robert and Joyce Deschaine, to have Tiffany live with them for several periods. On one occasion, Tiffany lived with Robert and Joyce for six months. Julie listed Robert and Joyce as emergency contacts at Tiffany's school and Tiffany had a permanent, fully furnished bedroom

---

[1] While Curtis did not utilize his parenting time very often, we note that his fitness as a parent is not immediately at issue in the present guardianship matter.

at Robert and Joyce's home. While Julie did not indicate in writing[2] her wishes for Tiffany's care in the event of her death, Robert and Joyce claimed that Julie told them she wanted them to care for Tiffany if anything ever happened to Julie.

Immediately after Julie's death, Robert and Joyce went to Julie's home and brought Tiffany to their home. Robert and Joyce testified that they did not know where Curtis was so they could not contact him. On the day of Julie's funeral, Curtis wanted to bring Tiffany to his home, but Robert refused to allow Curtis to do so.[3] Soon after, Robert filed a petition for temporary guardianship of Tiffany in the family division of the circuit court. The petition was amended to cite the requirements for guardianship set forth in MCL 700.5204(2)(b). The court initially granted Robert temporary guardianship for a three-week period, and Robert immediately moved for permanent or "ordinary" guardianship and custody. Citing lack of notice, Curtis objected to the initial grant of temporary guardianship, and a hearing was scheduled.

Following the hearing, the circuit court decided that Robert did not satisfy the conditions of MCL 700.5204(2)(b) to obtain a guardianship of any type. This ruling effectively reversed the court's grant of temporary guardianship. Consequently, Robert did not have standing to petition for custody of Tiffany. See MCL 722.26b(1) (a guardian has standing to move

---

[2] See MCL 700.5202 (a parent's will may provide for guardianship in the event of the parent's death).

[3] Robert testified, in part, that Curtis appeared to be glassy-eyed, so Robert did not allow Tiffany to go with him that day.

for custody).[4] Thus, the court granted Curtis's motion to dismiss Robert's ancillary request for custody and parenting time and denied Robert's alternative request for grandparent visitation.[5] However, the court stayed its order so that Tiffany could continue to live with Robert and Joyce pending this appeal.

## II. APPLICABLE LAW

The issue on appeal is whether Robert satisfied the relevant guardianship statute, MCL 700.5204(2)(b), which would have granted Robert standing to move for custody of his granddaughter. We agree with the circuit court that Robert did not meet the first statutory requirement of being permitted to house Tiffany when Julie died. A circuit court's factual findings are reviewed for clear error, which occurs when this Court is left with a firm and definite conviction that a mistake was made. *Townsend v Brown Corp of Ionia, Inc*, 206 Mich App 257, 263; 521 NW2d 16 (1994).

MCL 700.5204(2)(b) states:

> The court may appoint a guardian for an unmarried minor if . . . :

---

[4] A temporary guardianship is the same as a permanent or "ordinary" guardianship except that a temporary guardianship may not exceed six months. See *Kater v Brausen*, 241 Mich App 606, 607-610; 617 NW2d 40 (2000) (also holding that temporary guardians have standing to move for custody). A temporary guardianship is governed by both MCL 700.5204 (requirements for granting guardianship) and MCL 700.5213(3) (also stating that a temporary guardianship carries the same responsibilities as an ordinary guardianship).

[5] See *DeRose v DeRose*, 249 Mich App 388, 390-391; 643 NW2d 259 (2002) (holding that the grandparent-visitation statute, MCL 722.27b, is unconstitutional), lv gtd 467 Mich 884 (2002).

* * *

> The parent or parents *permit* the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed. [Emphasis added.][6]

Statutory interpretation is a question of law that this Court reviews de novo. *Cork v Applebee's of Michigan, Inc*, 239 Mich App 311, 316; 608 NW2d 62 (2000). The primary goal of judicial interpretation of statutes is to ascertain the Legislature's intent. *Manning v Amerman*, 229 Mich App 608, 612; 582 NW2d 539 (1998). The first step in determining intent is examining the specific language of the statute. *Id.* Our Legislature is presumed to have intended the meaning it plainly expressed. *Id.* Judicial construction is permitted only if the language is ambiguous or unclear. *Wortelboer v Benzie Co*, 212 Mich App 208, 215; 537 NW2d 603 (1995).

### III. ANALYSIS

We hold that the section of the guardianship statute cited above is not unclear and, therefore, statutory construction is not appropriate. See *id.*

In our view, the plain language of the statute states that if parents permit their child to permanently reside with someone else when the guardianship

---

[6] We conclude that Robert satisfied the other two requirements in the statute: (1) Julie "[did] not provide the other person with legal authority for the minor's care and maintenance, and [2] the minor [was] not residing with his or her parent or parents when the petition is filed." MCL 700.5204(2)(b); see also ns 9-10, *infra*. Here, the parties primarily dispute the first requirement for appointment stated in the statute, more specifically, the meaning of the term "permit."

issue arises, the court may appoint a guardian for the child. See MCL 700.5204(2)(b). Note that the term "permit," the meaning of which the parties primarily contest here, is in the present tense.[7] Thus, the permission referred to in the statute must be currently occurring—which would be shown by the child's actual presence in the care of another—when the guardianship issue arises. See, e.g., *Michalski v BarLevav*, 463 Mich 723, 733; 625 NW2d 754 (2001) (statutory language must be evaluated considering the present tense of the verbs employed); *Chmielewski v Xermac, Inc*, 457 Mich 593, 610 n 20; 580 NW2d 817 (1998) (Court's reading of statute "honors the Legislature's choice of the present tense"); *Farm Bureau Mut Ins Co of Michigan v Porter & Heckman, Inc*, 220 Mich App 627, 642 n 11; 560 NW2d 367 (1997) (present-tense definition of "owner" applied to "current" owners).

In the present case, when the guardianship issue arose by Julie's death, Julie was not permitting Tiffany to reside with Robert and Joyce. When Julie died, Tiffany was living with Julie.[8] Thus, at the time of Julie's death, Julie was not allowing Tiffany to live with Robert and Joyce, no matter what her past course of conduct or future intention was regarding

---

[7] The definition of "permit" is "to consent to," which is given in the present tense. Black's Law Dictionary (7th ed).

[8] One may consider when the guardianship petition was filed as the relevant point in time to determine permission. However, although Tiffany was staying with Robert when he filed the petition, again, Julie was not permitting Robert to care for Tiffany then either—predominately because she was deceased. See MCL 700.5204(2)(b) (the third requirement for guardianship is that the child is residing with the other party when the petition is filed); see also ns 9-10, *infra*.

this issue.[9] Therefore, the trial court properly ruled it could not appoint Robert as guardian for Tiffany under MCL 700.5204(2)(b).

## IV. CONCLUSION

While we need not employ principles of statutory construction because we hold that the statute is unambiguous, see *Wortelboer, supra,* even if we were to employ these principles, they would weigh in favor of the plain language of the statute. See, e.g., *Soap & Detergent Ass'n v Natural Resources Comm,* 415 Mich 728, 737; 330 NW2d 346 (1982) (Court noted that, alternatively, statutory construction would support plain language reading of statute). Importantly, MCL 700.5204 was preceded by MCL 700.424, which was repealed effective April 1, 2000, by 1998 PA 386. MCL 700.424(2)(b) formerly stated, "The parent or parents *have permitted* the minor to reside with

---

[9] Curtis claims that according to MCL 722.31(1), when Julie died, Tiffany's legal residence automatically became Curtis's residence. Thus, Robert had no right to bring Tiffany to his home and thereby petition for guardianship and custody. MCL 722.31(1) states: "A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. . . . [A] parent . . . shall not change a legal residence of the child to a location that is more than 100 miles from the child's [previous] legal residence . . . ."

Because the Child Custody Act of 1970 (in which MCL 722.31(1) appears) and the guardianship statutes have the same purpose of promoting the best interests of children, see *Frame v Nehls,* 452 Mich 171, 176-177; 550 NW2d 739 (1996), and MCL 700.5204(1), the two statutes may be interpreted consistent with each other, or in pari materia. See *State Treasurer v Schuster,* 456 Mich 408, 417; 572 NW2d 628 (1998). Therefore, MCL 722.31(1) additionally supports Curtis' previously established right to legal custody of Tiffany particularly when Julie died. Indeed, Curtis has a natural right to custody of his daughter. See *In re Clausen,* 442 Mich 648, 687-688; 502 NW2d 649 (1993) (a parent's natural right to custody); see also MCL 722.26c(1)(b)(ii) (no third-party custody action may lie if a child has one surviving parent with legal custody).

another person . . . ." (Emphasis added.) In contrast, as we stated above, the current version of the statute uses the term "permit." MCL 700.5204(2)(b). Any material change in the language of a statute is presumed to indicate a change in legal rights. *Sam v Balardo*, 411 Mich 405, 430-431; 308 NW2d 142 (1981); *Ettinger v Lansing*, 215 Mich App 451, 455; 546 NW2d 652 (1996). Thus, the statutory language was changed from the present perfect tense, "have permitted," to the present tense, "permit." Compare MCL 700.5204(2)(b), and former MCL 700.424(2)(b); see, e.g., *Girard v Wagenmaker*, 437 Mich 231, 242-243; 470 NW2d 372 (1991) (statute was interpreted in accordance with the use of the present perfect tense of the verb). The *Girard* Court noted:

> The present perfect tense generally "indicates action that was started in the past and has recently been completed or is continuing up to the present time," Sabin, ed., *The Gregg Reference Manual* (New York: McGraw-Hill, 6th ed, 1985), ch 10, p 192, or shows "that a current action is logically subsequent to a previous recent action." Ray & Ramsfield, *Legal Writing: Getting It Right and Getting It Written* (St. Paul: West Publishing Co., 1987), p 229. [*Girard, supra* at 242.]

Therefore, the meaning of the present perfect tense is distinct from the meaning of the present tense. See also *Random House Webster's College Dictionary* (2001) ("[P]resent tense" means "being, existing, or occurring at this time or now . . . ."), MCL 8.3a, and *Mino v McCarthy*, 209 Mich App 302, 304-305; 530 NW2d 779 (1995) (the words of a statute must be given their ordinary, normally accepted meanings). We conclude that the distinction in verb tense represents a difference in this case, resulting in a finding

that, even under statutory-construction principles, the current version of the statute uses the present tense of "permit" only.[10]

Therefore, the circuit court did not err in holding that Julie's past permission for Robert to take care of Tiffany did not meet the requirements for appointment of a guardian under MCL 700.5204(2)(b).

Affirmed.

---

[10] In addition, while not conclusive, legislative history may be examined to ascertain the meaning of a statutory provision. *Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001); *DeVormer v DeVormer*, 240 Mich App 601, 607-608; 618 NW2d 39 (2000). Notably, one piece of legislative analysis for MCL 700.5204 states that the bill would authorize appointment of a guardian where one parent dies or is missing and the other had *not been* granted legal custody. See House Legislative Analysis, HB 4859, January 23, 1995, p 1. That is not the situation in the present case. Here, Curtis has joint legal custody of his daughter, Tiffany; thus, MCL 700.5204(2)(b) cannot assist Robert in seeking guardianship and custody. See also n 9, *supra*. Our decision in this case announces the same rule as a previous unpublished decision of this Court, although that decision is not binding precedent. See MCR 7.215(C)(1). In *Catto v Kerr*, unpublished opinion per curiam of the Court of Appeals, issued September 26, 2000 (Docket Nos. 222784, 223318), this Court discussed the change in the verb tense of the statute at issue and held that because "permit" is in the present tense, it denotes current permission. *Id.* at pp 2-3. In that case, this Court held that the minor child's parents did not permit the child to reside with another party so the circuit court had no jurisdiction to order a guardianship. *Id.* at p 2. Further, this Court held that the only reason the child was staying with the petitioner "at the time the petition was filed," MCL 700.5204(2)(b), was because the petitioner "refused to relinquish possession" of the child to her parents. *Catto, supra* at 2. That is precisely the case here. The only reason Tiffany was residing with Robert when Robert filed the guardianship petition was because Robert refused to relinquish possession of Tiffany to Curtis, her surviving parent who retained legal custody. See *id.*