*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ORTA, Minors.

|  |  |
|---|---|
| MARIA ORTA, | UNPUBLISHED |
| | February 4, 2020 |
| Petitioner-Appellant, | |
| v | Nos. 346399; 346400 |
| | Delta Probate Court |
| LISA KEENEY, Guardian, | LC No. 15-021724-GM; |
| | 15-021725-GM |
| Respondent-Appellee. | |

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] petitioner appeals as of right an order denying her motion to terminate the guardianship of her two minor children, LAO and MPO. Respondent, petitioner's mother and the children's grandmother, was first appointed the children's guardian in October 2015. These appeals arise from petitioner's second petition to terminate the guardianship. Because the trial court improperly exercised its jurisdiction, we vacate its orders and remand for further proceedings consistent with this opinion, namely, returning the children to petitioner.

## I. BACKGROUND

We summarize only facts and procedural history from the initial guardianship hearing, as it is the only proceeding pertinent to the relevant legal issue.

---

[1] *In re Guardianship of LAO*, unpublished order of the Court of Appeals, entered December 7, 2018 (Docket Nos. 346399 and 346400).

In June 2015, 25-year-old petitioner took 4-year-old LAO[2] and 2½ -year-old MPO[3] to respondent's home near Escanaba in Delta County in the Upper Peninsula. Petitioner, who lived about eight hours away, left respondent with clothing[4] and supplies for her children, a signed statement consenting to emergency or general treatment for her children, her children's health insurance cards, and her telephone number. At that point, it was anticipated that petitioner's children would remain in respondent's care for a month.

According to petitioner, after the month passed, she and respondent had a telephone conversation, wherein respondent relayed that she would keep petitioner's children until petitioner was able to get into her apartment. And, although petitioner did not provide respondent with monetary support for her children, petitioner testified that she had offered to provide support, but respondent agreed that petitioner did not have to provide any.

Over Labor Day weekend 2015, petitioner borrowed a friend's car to see her children. Petitioner could not afford her own car and her first concern was securing housing for her family. Although petitioner had moved repeatedly during the five preceding years,[5] she had leased a two-bedroom apartment as of October 1st and had full-time employment. Petitioner's employer routinely drug-tested her confirming that she was drug-free. Moreover, petitioner had no criminal record.

Within days of petitioner's visit, respondent filed a guardianship petition, alleging that a temporary guardian was necessary because petitioner had seen her children once in three months and "provides no care or support." The petition reflected that petitioner was homeless and possibly living in Eaton County.

That very day, the trial court appointed respondent as her grandchildren's temporary guardian based on respondent's allegation that "the parent[] permit[s] the minor[s] to reside with another person and d[id] not provide the other person with the legal authority for the care and maintenance of the minor[s] who w[ere] not residing with a parent when the petition was filed." The court further ordered that any parenting time would be in respondent's discretion. The temporary guardianship was to expire on October 9, 2015. This was later extended to October 15th.

---

[2] According to petitioner's testimony, LAO's father is deceased; according to respondent, there were three or four men, and maybe even five, who were potentially LAO's biological father.

[3] MPO has no legal father; again, respondent suggested there were multiple potential biological fathers.

[4] Respondent would later testify that while petitioner was well-dressed and manicured, LAO had outgrown her panties and she was wearing socks provided by respondent. As to MPO, he had a blister because his shoes were too tight.

[5] Petitioner estimated she had moved on 11 or 12 occasions; respondent estimated 20 occasions with 3 of them being with respondent.

Respondent's attorney's office served petitioner with notice of the temporary guardianship, her ability to object, and notice of the hearing regarding respondent's petition for full guardianship in care of an address in Eaton County. The Department of Human Services (DHHS) was appointed to investigate and report to the court.

Thereafter, respondent brought her grandchildren downstate for a funeral. Afterward, petitioner took LAO and walked down the road; petitioner could not take MPO because he was inside respondent's car. Petitioner called the police, reporting that her parents were trying to take her children. After respondent produced the guardianship paperwork, the police advised petitioner that she needed to go through the court. Thereafter, respondent re-served petitioner with the legal papers at an address in Calhoun County.

During the hearing on the petition, respondent testified that "I want [petitioner] to be their mom, but I want her to get her life together." Respondent's attorney assured the court that respondent would "be responsible and enable the children to have healthy and substantial contact with their mother. She's not going to build a brick wall around them, . . . and [petitioner] is going to have to re-earn the trust of her mother to make sure that these visits go well[.]" Respondent's attorney predicted future DHHS intervention for petitioner, noting her history of transience, internet-based relationships, and poor judgment in providing for her children's material needs.

Petitioner, who represented herself, assured the court that she was unaware of the temporary guardianship when she had called the police. Petitioner maintained that she had yet to receive the guardianship paperwork. Petitioner further suggested that her children were being harmed by her inability to visit them given that she lived seven hours away.

Following the October 2015 hearing, the court concluded that the statutory grounds for implementing a guardianship were met. The court then appointed respondent as the children's full guardian. The court's order left parenting time in the guardian's discretion and directed DHHS to assist petitioner with reasonable visits and phone calls.[6] The court further ordered petitioner to pay $20.00 per child in temporary support, consistent with what petitioner claimed she could afford, until the Friend of the Court (FOC) made its support recommendation. Because petitioner was in town, later that same day, per the parties' stipulation, the court entered an order setting support at $350 per month for both children to begin November 1.

The trial court stated that the guardianship would be terminated if petitioner obtained a stable job and housing and continued a relationship with the children. The court indicated that it "want[ed] to see a longer pattern of stability in" petitioner's employment[7] and "living arrangement."

---

[6] There is no record evidence that DHHS did anything to assist petitioner with visitation or contact.

[7] It appears that the court mistakenly believed that petitioner was employed for a couple of weeks. In fact, petitioner had been employed for six months, but had received a promotion two weeks earlier.

Petitioner thereafter filed two petitions to terminate the guardianship in November 2016 and, with counsel, in July 2018. Throughout the relevant period, the trial court also ordered DHHS to provide statutorily mandated annual review and twice continued the guardianship without a hearing.[8]

This appeal follows the trial court's denial of the July 2018 petition to terminate.

## III. DISCUSSION

### A. STANDARDS OF REVIEW

We review jurisdictional questions de novo. *Bank v Mich Ed Ass'n—NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016). We also review questions of statutory interpretation de novo. *Weaver v Giffels*, 317 Mich App 671, 678; 895 NW2d 555 (2016).

"This Court . . . reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *In re Bittner Conservatorship*, 312 Mich App 227, 235; 879 NW2d 269 (2015). Moreover, "[a] trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

"A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). We defer to the trial court "on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993).

### B. JURISDICTION

Petitioner argues that the trial court lacked jurisdiction to appoint respondent the children's guardian in the first place because the statutory requirements for obtaining the guardianship were not satisfied.

Initially, we believe that petitioner's jurisdictional challenge is better understood as an argument that the trial court misapplied the requirements for establishing a guardianship. And, because we agree that the initial guardianship appointment was merely the first phase in a continuous guardianship proceeding, we conclude that petitioner's challenge to the trial court's

---

[8] The court is required to review a guardship annually if the minor involved is under six years of age.

exercise of its jurisdiction is permissible. See *e.g.*, *In re Ferranti*, 504 Mich 1; 934 NW2d 610 (2019).

A trial court may appoint a guardian if: "[(1)] The parent or parents permit the minor to reside with another person and [(2)] do not provide the other person with legal authority for the minor's care and maintenance, and [(3)] the minor is not residing with his or her parent or parents when the petition is filed." MCL 700.5204(2)(b). This Court has previously explained that, if a parent permits her "child to *permanently* reside with someone else when the guardianship issue arises, the court may appoint a guardian for the child." *Deschaine v St Germain*, 256 Mich App 665, 669-670; 671 NW2d 79 (2003) (emphasis added). In other words, this Court reads "resides" as containing not only a physical presence, but also an accompanying intent element of choosing that place as a permanent residence. *Weaver v Giffels*, 317 Mich App 671, 685; 895 NW2d 555 (2016).

In this case, there is no dispute that the original agreement between petitioner and respondent involved a *temporary* living arrangement for petitioner's children. Initially, petitioner asked respondent to care for petitioner's children for about one month. There is no dispute that respondent agreed to this temporary arrangement. And, at the initial hearing on the guardianship, petitioner testified that she and respondent spoke after the month had passed and agreed that respondent would continue to care for petitioner's children until petitioner moved into her apartment. Again, this was a *temporary* arrangement and petitioner leased her apartment effective October 1, 2015. Because a necessary statutory requirement was lacking, the trial court erred in appointing respondent the children's guardian.[9] Accordingly, we vacate the trial court's orders and remand for further proceedings consistent with this opinion, namely, to return petitioner's children to her. We do not retain jurisdiction.

This opinion has immediate effect. MCR 7.215(F)(2).

/s/ Mark T. Boonstra
/s/ Jonathan Tukel
/s/ Anica Letica

---

[9] In light of our resolution, we need not further address petitioner's remaining claims.