*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
June 13, 2024

*In re* BAM-L, Minor.

No. 369425
Kent Circuit Court
Family Division
LC No. 23-005956-GM

Before: RICK, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Petitioner appeals as of right the trial court's order denying his petition for guardianship of his nephew, BAM-L. On appeal, petitioner asserts that, despite evidence that the requirements for appointment of a guardian under MCL 700.5204(2)(b) were satisfied in this case, the trial court refused to appoint petitioner as guardian of BAM-L, which constituted an abuse of discretion. Petitioner also argues that the trial court erroneously failed to make factual findings regarding BAM-L's special immigrant juvenile (SIJ) status under 8 USC 1101(a)(27)(J) on the basis of its belief that the guardianship petition was an orchestrated arrangement that was part of an immigration scheme. For these reasons, petitioner requests that we vacate the trial court's order and issue an order appointing him guardian of BAM-L and making special findings relevant to BAM-L's SIJ status. We vacate the trial court's order, appoint petitioner as guardian of BAM-L, and enter an accompanying order with special findings of fact to establish SIJ status for BAM-L.

## I. FACTS

BAM-L was born in Guatemala in 2006 and resided there with his mother until he was eight years old. At that time, his mother left Guatemala and moved to the United States, leaving BAM-L in Guatemala with his maternal grandparents. BAM-L's grandparents were in their 70s and no longer worked, which forced BAM-L to search for work rather than attend school to help provide for the family. In February 2022, BAM-L entered the United States after determining that he had no future in Guatemala. Upon arrival, he moved in with petitioner, who lived approximately 10 minutes away from BAM-L's mother. BAM-L resided with petitioner, as opposed to his mother, because petitioner had greater financial stability and the ability to provide him with a better future.

-1-

In June 2023, petitioner filed a petition to be appointed as guardian of BAM-L under MCL 700.5204(2)(b). In the same petition, BAM-L nominated petitioner as his guardian under MCL 700.5212 (appointment of guardian nominated by minor 14 years or older). Contemporaneously with this petition, petitioner moved the trial court to make special findings on the issue of SIJ status. At the hearing held on the petition, both petitioner and BAM-L testified about BAM-L's living arrangements with petitioner, BAM-L's mother's abandonment of BAM-L in Guatemala, and how BAM-L's welfare would be served by remaining in the United States under the care of petitioner. In addition to this, at the hearing, BAM-L testified that, at one point, his lawyer indicated that he was not allowed to reside with his mother. Upon hearing this, the trial court immediately ended the hearing and denied petitioner's guardianship petition, noting:

> I'm not finding the guardianship. I cannot make a finding under the guardianship that this child is dependent as a result of not having a parent who lives very close by. Especially, when he has just testified repeatedly that he has been told that he cannot live with his mother which appears to be, at least, raises real questions as to whether or not this is, essentially, an arrangement that has been orchestrated.

Petitioner now appeals.

## II. ANALYSIS

Petitioner argues that the trial court abused its discretion by denying his petition to be appointed as guardian of BAM-L without a proper basis. Petitioner also argues that the trial court erroneously failed to make factual findings on the issue of SIJ status. We agree.

We review the trial court's dispositional rulings for an abuse of discretion and the trial court's factual findings underlying its decision for clear error. *In re Velasquez*, 344 Mich App 118, 127; 998 NW2d 898 (2022). "The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). In addition to this, the trial court "necessarily abuses its discretion when it makes an error of law." *Velasquez*, 344 Mich App at 127 (quotation marks and citation omitted).

"The Immigration and Nationality Act of 1990 established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States." *Id*. at 128 (quotation marks and citation omitted). Under this Act, 8 USC 1101(a)(27)(J) and 8 CFR 204.11 (2022) work in tandem to "afford undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States." *In re LFOC*, 319 Mich App 476, 484; 901 NW2d 906 (2017) (quotation marks and citation omitted).

"There is a two-step process for obtaining SIJ status, which entails a unique hybrid procedure that directs the collaboration of state and federal systems." *Velasquez*, 344 Mich App at 128 (quotation marks and citation omitted). "First, the state court makes predicate factual

findings pertinent to the juvenile's SIJ status," including that the individual seeking SIJ status is under the age of 21 and unmarried. *Id*. In addition to this,

> state courts must make three factual findings: (1) the juvenile is declared dependent on a juvenile court; (2) the juvenile's reunification with one or both of their parents is not viable because of neglect, abandonment, or a similar basis found under state law, and (3) the juvenile's interests would not be served by returning to their country of origin. [*Id*. at 132, citing 8 USC 1101(a)(27)(J).]

In this case, BAM-L sought to satisfy the first factual finding through the trial court appointing him a guardian—petitioner—which would render BAM-L a ward of the trial court and, therefore, dependent upon the trial court. In Michigan, "[a] person may become a minor's guardian by parental appointment or court appointment." MCL 700.5201. In this case, petitioner sought to be appointed guardian of BAM-L by the trial court under MCL 700.5204(2)(b) of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. Notably, "MCL 700.5204 is not applicable unless a parent allows a child to permanently reside with another person and the parent does not grant legal authority to the other person." *In re Guardianship of Versalle*, 334 Mich App 173, 180; 963 NW2d 701 (2020). MCL 700.5204 provides in relevant part:

> (1) A person interested in the welfare of a minor, or a minor if 14 years of age or older, may petition for the appointment of a guardian for the minor. The court may order the department of health and human services or a court employee or agent to conduct an investigation of the proposed guardianship and file a written report of the investigation.

> (2) The court may appoint a guardian for a minor if any of the following circumstances exist:

> \* \* \*

> (b) The parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed.

Therefore, for the trial court to consider appointing an individual as a guardian, "that individual must establish that (1) the parent permits the children to reside with another person, (2) the parent does not provide that other person with legal authority for the children's care, and (3) the children do not reside with the parent when the petition is filed." *Versalle*, 334 Mich App at 181, citing MCL 700.5204(2)(b). If the trial court determines, after a hearing, that these requirements have been satisfied, "a qualified person seeks appointment, venue is proper, the required notices have been given," and "the minor's welfare will be served by the requested appointment, the court shall make the appointment." MCL 700.5213(2).

As to the permission of the parent, "the permission referred to in the statute must be currently occurring—which would be shown by the child's actual presence in the care of another—when the guardianship issue arises." *Deschaine v St Germain*, 256 Mich App 665, 670; 671 NW2d

79 (2003). "[A] lower court may appoint a guardian if parents permit their child to permanently reside with someone else when the guardianship issue arises . . . ." *Versalle*, 334 Mich App at 181 (quotation marks and citation omitted). Additionally, "residence" means "a place of abode accompanied with the intention to remain." *Id*. (quotation marks and citation omitted). Lastly, "[t]here must also be no grant of legal authority for a child's care and maintenance, which includes facilitating the child's education and social or other activities as well as medical or other professional care, treatment, or advice." *Id*. (quotation marks and citations omitted).

The guardianship petition in this case also sought appointment of petitioner as guardian of BAM-L through nomination. If the minor seeking a guardian through a petition "is 14 years of age or older, the court shall appoint a person nominated by the minor, unless the court finds the appointment contrary to the minor's welfare." MCL 700.5212. Notably, the Legislature's use of the word "shall" in both MCL 700.5213(2) and MCL 700.5212 "indicates a mandatory and imperative directive." *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014).

The second step in the process to obtain SIJ status requires the individual seeking SIJ status to present the trial court's factual findings to the United States Citizenship and Immigration Services, "which engages in a much broader inquiry than state courts, and makes the ultimate decision as to whether or not the juvenile's application for SIJ status should be granted." *LFOC*, 319 Mich App at 486 (quotation marks and citation omitted). Therefore, a state court's "findings are limited to areas falling within the institutional competence of such courts: child welfare determinations concerning abuse, neglect, and abandonment, as well as the child's best interests." *Id*. at 487. Although "[t]he federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made," a state court "is not to engage in an immigration analysis or decision . . . ." *Id*. at 486-487. This is because, even though the state court "determines whether the evidence supports the findings," the "ultimate immigration decision remains with the federal government . . . ." *Id*. at 487.

## A. GUARDIANSHIP

Petitioner argues that the trial court abused its discretion by denying his petition to be appointed as guardian of BAM-L without a proper basis. We agree.

In this case, petitioner sought to be appointed as guardian of BAM-L under MCL 700.5204(2)(b). In addition to this, in the same guardianship petition, BAM-L, who was at least 14 years old at the time, nominated petitioner as his guardian under MCL 700.5212. At the hearing on the petition, the trial court made no findings about the requirements to appoint a guardian under either of these provisions. Instead, the trial court made a blanket denial of the petition, noting that it could not find that BAM-L was dependent upon the uncle when his mother lived nearby. The trial court also reasoned that BAM-L's testimony that his lawyer informed him that he was not allowed to live with his mother raised suspicions about whether the petition was part of an arrangement.

Although not explicitly stated, given that the guardianship petition was filed concurrently with a motion for special findings on the issue of SIJ status, it is reasonable to conclude that the "arrangement" that the trial court was suspicious of was an immigration scheme. When a trial court is tasked with making predicate factual findings pertaining to the issue of SIJ status, it is "not

allowed to engage in an immigration analysis or decision" because the "ultimate immigration decision remains with the federal government . . . ." *Id*. at 486-487. Therefore, it was outside of the scope of the trial court's authority to deny the guardianship petition on the ground that it believed that petitioner and BAM-L's mother orchestrated a living arrangement to facilitate BAM-L's application for SIJ status. In overstepping its bounds, the trial court also failed to engage in the task in front of it—determining whether guardianship was proper under either MCL 700.5204(2)(b) or MCL 700.5212. This failure constituted an abuse of discretion because the trial court failed to make any of the necessary findings required under these provisions and, therefore, denied the guardianship petition on an improper basis.

Under MCL 700.5204(2)(b), for petitioner to be properly appointed as guardian of BAM-L, he needed to establish that (1) BAM-L's mother permitted BAM-L to reside with petitioner, (2) BAM-L's mother did not provide petitioner with legal authority for BAM-L's care, and (3) BAM-L did not reside with his mother when the petition was filed. See *Versalle*, 334 Mich App at 181.

As to the first requirement, the record reflects that BAM-L's mother permitted BAM-L to reside with petitioner. There was testimony given that BAM-L's mother was aware that BAM-L was living with petitioner and approved of such. In addition to this, BAM-L's mother lived within walking distance of petitioner and saw BAM-L weekly on Sundays, which suggests that she was aware that BAM-L lived with petitioner and did not take issue with it. Moreover, BAM-L's mother received proper notice of the guardianship petition and the hearing on the petition and did not object to it or appear at the hearing. Therefore, there was sufficient evidence to establish that BAM-L's mother permitted BAM-L to reside with petitioner and that permission was ongoing.

As to the second requirement, there was no evidence presented that BAM-L's mother provided petitioner with the legal authority to care for BAM-L. Indeed, the guardianship petition specifically noted that BAM-L's mother had not provided petitioner with legal authority for the care and maintenance of BAM-L. In addition to this, testimony was given that, although BAM-L kept in touch with his mother and saw her weekly, petitioner was the person who purchased BAM-L's clothing and school necessities, and transported him to school. Given that there was no testimony provided at the hearing on the petition to refute the claim in the petition that BAM-L's mother did not provide petitioner with the legal authority to care for BAM-L, it is reasonable to conclude that this requirement was satisfied. BAM-L was presently living with petitioner and, despite this, petitioner lacked legal authority to care for him, which hindered petitioner's ability to provide for BAM-L's care and maintenance.

As to the third requirement, testimony was given that, at the time the petition was filed, BAM-L lived with petitioner. Because there was no evidence presented to the contrary, there was sufficient evidence to establish that, at the time the guardianship petition was filed, BAM-L lived with petitioner. Therefore, the evidence presented before the trial court established that all three requirements under MCL 700.5204(2)(b) were satisfied and, therefore, petitioner was qualified to be appointed as guardian of BAM-L. Moreover, under MCL 700.5213(2), the trial court was required to make such an appointment if BAM-L's welfare would be served by the appointment.

Testimony given established that BAM-L resided with petitioner from the time that he arrived in the United States in February 2022. In addition to this, a report prepared by the Michigan

Department of Health and Human Services (DHHS) during its investigation conducted under the guardianship petition noted that petitioner and BAM-L had a close relationship which dated back to when they both lived in Guatemala together and petitioner assisted in the raising of BAM-L. The report also noted that BAM-L relied on petitioner even when petitioner moved to the United States, and that petitioner frequently spoke with BAM-L over the phone during that time. The report also noted that petitioner was helping BAM-L adjust to life in the United States, including the cultural differences between the United States and Guatemala. Moreover, the report indicated that petitioner assisted BAM-L with his reading and writing and took initiative to ensure that BAM-L's educational needs were met. Given that the alternative to living with petitioner was for BAM-L to live with his mother, whom he testified abandoned him, or his father, whom he testified he did not know, the record indicates that BAM-L's welfare would be served by appointing petitioner as his guardian. Therefore, MCL 700.5213(2) required the trial court to make the appointment, and its failure to do so constituted an abuse of discretion.

In addition to MCL 700.5204(2)(b), the guardianship petition sought appointment of petitioner as guardian of BAM-L under MCL 700.5212 and, because BAM-L was over the age of 14 at the time the petition was filed, the trial court was required to make such an appointment unless it found that the appointment would be contrary to BAM-L's welfare. See MCL 700.5212. For the same reasons already discussed, the record reflects that BAM-L's welfare would be served by the appointment. Accordingly, the trial court was required to make the appointment, and its failure to do so constituted an abuse of discretion. This is especially true given the fact that the trial court made no finding on the record that the appointment would be contrary to BAM-L's welfare.

## B. SIJ-STATUS FINDINGS

Petitioner also argues that the trial court erred by refusing to make any factual findings on the issue of SIJ status. We agree.

In addition to petitioning the trial court to appoint him as guardian of BAM-L, petitioner also moved the trial court to make special findings on the issue of SIJ status. The trial court, just as it did for the issue of guardianship, failed to make the appropriate findings. Indeed, the trial court's act of denying the guardianship petition necessarily denied petitioner's motion to make special findings because, as discussed earlier, the first factual finding that the trial court was required to make—that BAM-L was declared dependent on the court—was not satisfied when BAM-L was not rendered a ward of the trial court on the basis of guardianship appointment.

Because the trial court abused its discretion by denying the guardianship petition, it also erred by declining to make the special findings on the issue of SIJ status. In such a situation, the typical remedy would be to remand this issue to the trial court and direct it to make the appropriate findings; however, given the time constraint that BAM-L is faced with regarding his pursuit of SIJ status, petitioner requests that we make such findings on the basis of the lower court record. This Court has recently exercised its discretion to make a best interests finding under SIJ-status findings when the lower court record was sufficient to make such a finding. See *Velasquez*, 344 Mich App at 142. On appeal, petitioner cites this exercise of discretion in urging us to make SIJ-status findings on the basis of the lower court record. Given that the lower court record is sufficient to

do so, we exercise our discretion to make SIJ-status findings on the basis of the lower court record, and adopt the authority provided by *Velasquez* to do so.

As noted earlier, the first finding, that BAM-L was declared dependent upon a juvenile court, is established by a preponderance of the evidence under appointment of petitioner as guardian of BAM-L. As to the second finding, that BAM-L's reunification with one or both of his parents is not viable because of neglect, abandonment, or a similar basis. Testimony given establishes that BAM-L's mother abandoned him when she left him in Guatemala at the age of eight. Notably, neither EPIC nor the Immigration and Nationality Act define the term "neglect" or "abandonment." This Court has, however, previously turned to Michigan law for guidance in statutorily defining these terms. See *id*. at 135-136. Under the Child Abuse and Neglect Prevention Act, MCL 722.601 *et seq.*, MCL 722.602(1)(d) provides:

> "Neglect" means harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

Further, under Michigan's Child Protection Law, MCL 722.621 *et seq.*, "child neglect" is defined as:

> harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:
>
> (*i*) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or by the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.
>
> (*ii*) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk. [MCL 722.622(k).]

Lastly, under Michigan's Uniform Child-Custody Jurisdiction and Enforcement Act, MCL 722.1101 *et seq.*, MCL 722.1102(a) defines the term "abandoned" as "left without provision for reasonable and necessary care or supervision." Notably, this Court has recognized that courts have "broadly interpreted" the definitions of "neglect" and "abandonment" in SIJ-status proceedings. *Velasquez*, 344 Mich App at 138. This Court has also cited the Court of Appeals for the District of Columbia, noting that it indicated that " 'the trial court must recognize that Congress to some extent has put its proverbial thumb on the scale favoring' " SIJ status. *Id*., quoting *BRLF v Sarceno Zuniga*, 200 A3d 770, 776 (DC 2019). Accordingly, the definitions of "neglect" and "abandonment" should be broadly construed in the context of SIJ-status proceedings.

Given this, we conclude that, for all intents and purposes, BAM-L's mother abandoned and neglected him. Testimony in this case established that petitioner, rather than BAM-L's mother,

provides for BAM-L's welfare through providing food, clothing, and shelter. Although there was testimony that petitioner earned a higher income than BAM-L's mother, BAM-L's mother was still financially able to provide food, clothing, and shelter to her other children, which indicates that, although she is financially able to do so, she fails to provide such necessities to BAM-L. Under Michigan law, this constitutes neglect. See MCL 722.602(1)(d) and MCL 722.622(k). Moreover, both petitioner and BAM-L testified that BAM-L's mother left him in Guatemala when he was only eight years old. Although he resided with his grandparents, they were in their 70s, no longer worked, and struggled to provide food. Further, in a report prepared by the DHHS, BAM-L indicated that, while in Guatemala, given the financial difficulties that his grandparents faced, he was unable to attend school and was forced to find work to help provide for the family. In addition to this, the report noted that BAM-L was called upon by local gang members to sell drugs and, when he refused, he received threats against his life. This information indicates that BAM-L's mother left BAM-L in Guatemala without reasonable or necessary care and placed him at unreasonable risk of harm in doing so, which constitutes neglect and abandonment under Michigan law. See MCL 722.622(k) and MCL 722.1102(a). Further, the record establishes that BAM-L's father abandoned him at birth by never being a part of his life. Indeed, BAM-L testified that he did not know his father at all and BAM-L's father's name is not listed on his birth certificate. Therefore, we conclude that the second factual finding is satisfied by a preponderance of the evidence. Although BAM-L could potentially reunify with his mother, there is sufficient evidence of neglect and abandonment.

As to the third finding, that BAM-L's interests would not be served by returning to Guatemala, this Court has previously held that, "for purposes of SIJ-status findings, a court may apply the Child Custody Act factors, some combination of the Adoption Code and Child Custody Act factors, or a unique set of factors developed by the trial court . . . ." *Velasquez*, 344 Mich App at 145 (quotation marks and citation omitted). In this case, the DHHS, in its report, employed the best-interest factors provided under EPIC to analyze whether appointment of petitioner as guardian of BAM-L was in BAM-L's best interests. See MCL 700.5101.

Employing the same factors, we conclude, by a preponderance of the evidence, that BAM-L's interests would not be served by returning to Guatemala. BAM-L has a close relationship with petitioner, including the fact that BAM-L looks to petitioner as a mentor and relies on him for guidance and support. In addition to this, petitioner intends to assist BAM-L in pursuing an education, including helping him improve his reading and writing abilities. Moreover, petitioner has been paramount to BAM-L's transition to the United States, including helping him adjust to the cultural differences between the United States and Guatemala. Additionally, petitioner testified at the hearing on the guardianship petition that he has worked as a painter for several years, working 50 to 55 hours a week. Petitioner also noted that he was prepared to care for BAM-L until he turned 18 years old. Further, BAM-L has resided with petitioner since his arrival to the United States in early 2022; therefore, petitioner's home is the only home that BAM-L has ever known in the United States. In addition to this, petitioner has no criminal record or Child Protective Services history. Petitioner also noted that there were no health concerns that would prevent him from maintaining a safe and stable home for BAM-L. Further, BAM-L testified that he was attending school in the United States and, when he lived in Guatemala, he was unable to go to school given the financial restraints on his family. In addition, BAM-L indicated to the trial court and DHHS that he wants to live with petitioner, including the fact that BAM-L nominated petitioner as his guardian in the guardianship petition. The record also reflects that BAM-L

suffered from poverty and gang-related threats while living in Guatemala. Given this, BAM-L's interests will be best served by remaining in the United States.

### III. CONCLUSION

The trial court abused its discretion by refusing to engage in its fact-finding duty and denying petitioner's guardianship petition without a proper basis. A review of the record establishes that appointment of petitioner as guardian of BAM-L was required under MCL 700.5212 and MCL 700.5213. In addition to this, the trial court erred by refusing to make special findings on the issue of SIJ status on the basis that the guardianship petition was an orchestrated arrangement. A review of the record reflects that there was evidence to establish each factual finding relevant to SIJ status by a preponderance of the evidence.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Kathleen Jansen
/s/ Anica Letica