*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GUARDIANSHIP OF AB.

UNPUBLISHED
August 20, 2025
10:04 AM

No. 372382
Oakland Probate Court
LC No. 2013-352608-GM

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

Appellants appeal as of right from the probate court's order granting the petition of appellee to terminate the minor guardianship over her daughter (AB)[1] in this guardianship action under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. For the reasons set forth in this opinion, we vacate and remand to the probate court for further proceedings.

## I. BACKGROUND

This case arises from the minor guardianship over appellee's daughter, AB, who at the time the probate court granted the petition to terminate the guardianship was 11 years old. Appellants are the maternal aunt and uncle of appellee. Appellee agreed to place AB in the care of appellants in 2013 because she was not able to care for AB herself. AB was three months old. At the request of Child Protective Services, appellants welcomed both AB and her brother AH into their home. At that time, appellee was addicted to methamphetamine and also was abusing prescription drugs. The petition for appointment of appellants as guardians of AB was filed in September 2013. The petition alleged that AB was in need of a guardian because appellee had allowed her to reside with another person, but did not provide the other person with the legal authority for the care and maintenance of AB, and because AB was not residing with a parent at the time. The letters of guardianship were entered by the probate court on October 30, 2013.

---

[1] Appellee also has a son "AH" who is not a subject of this matter.

Appellee had minimal contact with the children before she moved to Arkansas in January 2015, where, after participating in a recovery program, she married and was able to get clean of drugs. Appellee had initially filed a petition to terminate AB's guardianship in August 2017, and she traveled to Michigan several times during the court proceedings. In April 2018, after divorcing her husband in Arkansas, appellee returned to Michigan and moved in with her mother so that she could be closer to her children as she sought reunification.[2] Appellee ended up not proceeding on that petition. She subsequently filed the instant petition in May 2024 seeking termination of the minor guardianship of AB, which is at issue in this appeal. Appellee argued that it was in AB's best interests to terminate the minor guardianship as appellee had rectified the issues that led to AB being placed in a guardianship in the first instance. Appellee also argued that consideration of the best-interest factors of MCL 700.5101 weighed in favor of the minor guardianship being terminated. Appellants filed objections, contending that it would be more prudent to first require that appellee meet several guardianship-related goals, such as the payment of child support arrearages, completion of a parenting class, screening for illicit drug and alcohol use, and verification of a home that was suitable for AB, as well as confirmation that appellee could support AB. Following a three-day evidentiary hearing, the probate court, after weighing the best-interest factors of MCL 700.5101, granted the petition and entered an order terminating the minor guardianship as of mid-February 2025. Appellants now appeal as of right.

## II. TERMINATION OF MINOR GUARDIANSHIP

On appeal, appellants challenge the probate court's rulings when weighing the best-interest factors under MCL 700.5101(a)(*i*), (a)(*ii*), (a)(*iii*), (a)(*v*), (a)(*vi*), and (a)(*vii*). We will address each of appellants' challenges in turn.

## A. STANDARDS OF REVIEW

The probate court's dispositional rulings are reviewed for an abuse of discretion. *In re Redd Guardianship*, 321 Mich App 398, 403; 909 NW2d 289 (2017). When the probate court's decision falls outside the range of reasonable and principled outcomes, it amounts to an abuse of discretion. *Id*. The probate court's factual findings are reviewed for clear error. *Id*. A factual finding is clearly erroneous if, after reviewing the record as a whole, this Court is left with the definite and firm conviction that the probate court made a mistake. *Id*.

## B. ANALYSIS

In *In re Versalle Guardianship*, 334 Mich App 173, 178; 963 NW2d 701 (2020), this Court acknowledged that a parent's constitutionally protected right to make decisions regarding the care, custody, and management of their children could not be dependent on the nature of the legal proceeding. Accordingly, in *Versalle Guardianship*, this Court recognized that "a parent's constitutional right to raise his or her child is also applicable in the guardianship context." *Id*. at 179. Further, in *Deschaine v St Germain*, 256 Mich App 665, 671 n 9; 671 NW2d 79 (2003), this Court acknowledged that because the Child Custody Act (CCA), MCL 722.21 *et seq*., and the

---

[2] Appellants adopted AH in January 2020, and AH is not the subject of this appeal.

guardianship statutes share the same purpose of "promoting the best interests of children," the two statutory schemes are interpreted consistently with each other, or *in pari materia*.

The best-interest factors provide guidance for the probate court as it determines whether a termination of the minor guardianship would be in the minor child's best interests. See MCL 700.5209(2)(a). As used in the relevant portions of EPIC, MCL 700.5101 provides, in pertinent part:

(a) "Best interests of the minor" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(*i*) The love, affection, and other emotional ties existing between the parties involved and the child.

(*ii*) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue educating and raising the child in the child's religion or creed, if any.

(*iii*) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(*iv*) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(*v*) The permanence, as a family unit, of the existing or proposed custodial home.

(*vi*) The moral fitness of the parties involved.

(*vii*) The mental and physical health of the parties involved.

(*viii*) The child's home, school, and community record.

(*ix*) The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference.

(*x*) The party's willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the child and his or her parent or parents.

(*xi*) Domestic violence regardless of whether the violence is directed against or witnessed by the child.

(*xii*) Any other factor considered by the court to be relevant to a particular dispute regarding termination of a guardianship, removal of a guardian, or parenting time.

On appeal, appellants first argue that the probate court did not render the necessary factual, best interests findings under MCL 700.5101(a)(*i*), (a)(*ii*), (a)(*vi*), and (a)(*vii*), and remand is necessary. With respect to Factors (a)(*i*) and (a)(*vii*), we agree.

Regarding Factors (a)(*i*) and (a)(*vii*), while weighing each factor as "even," the probate court did not render factual findings that would allow this Court to determine if its findings on these factors were clearly erroneous. While the probate court is not required by the CCA or MCR 2.517 to comment on every fact in evidence or accept or reject every proposition of law offered, see *Baker v Baker*, 411 Mich 567, 583; 309 NW2d 532 (1981), the probate court's findings must be sufficient for this Court to conduct meaningful appellate review, *MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005). These same rules are applicable in the context of guardianship cases given that EPIC and the CCA are read *in pari materia*. *Deschaine*, 265 Mich App at 671 n 9. Therefore, we remand this case to the probate court to address those two factors in greater detail. However, with respect to Factor (a)(*ii*) and (a)(*vi*), the probate court not only provided more detailed reasoning, but it also stated that both factors were weighed evenly in favor of each party. Accordingly, appellants' argument that the probate court's findings on Factors (a)(*ii*) and (a)(*vi*) do not contain sufficient factual findings is without merit.

Appellants next challenge the probate court's substantive findings on several of the best-interest factors on which it did render factual findings.

First, appellants challenge the probate court's factual finding on Factor (a)(*iii*) as being clearly erroneous. Appellants argue that it was inappropriate for the probate court to focus on the particulars of AB's education in weighing this factor as a child's education is not relevant to "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 700.5101(a)(*iii*). However, this factor addresses the ability of each party to provide for the material needs of the child, and can include such needs as a child's school lunches and uniforms. See *Kuebler v Kuebler*, 346 Mich App 633, 681; 13 NW2d 339 (2023). The probate court shared that it "was really shocked" that appellants did not have AB's hearing tested until later in her school years. Still, the probate court went on to state that it did not blame appellants for any of the struggles or delays that AB had experienced with her education resulting from her hearing issues. The probate court also noted that appellants were doing a "great job" of educating AB and that it believed appellee had the same ability.

Appellants are correct that the probate court referenced appellants' conduct in educating AB in the context of Factor (a)(*iii*), as opposed to Factor (a)(*ii*), which addresses the capacity and disposition of the parties to continue educating the child. However, a review of the probate court's decision in context reveals that it mentioned AB's education in the context of stating that appellants were not to blame for any delays in her learning. Yet, the probate court then went one step further, and stated its conclusion that appellee had the same ability to educate AB in a satisfactory manner. In considering AB's education, the probate court considered an issue that was not within the ambit of MCL 700.5101(a)(*iii*). Instead, the issue of the parties' respective abilities to continue AB's education should have been weighed in the context of Factor (a)(*ii*). But, the probate court did not render factual findings for this factor, stating only that it believed that the love of a parent is "truly special." Accordingly, appellants are correct that in weighing Factor (a)(*iii*), the probate court erred as a matter of law.

Appellants also challenge the probate court's factual findings under MCL 700.5101(a)(*v*), which considers "[t]he permanence, as a family unit, of the existing or proposed custodial home," which, like its counterpart under the CCA, addresses "the child's prospects for a stable family environment." *Ireland v Smith*, 451 Mich 457, 465; 547 NW2d 686 (1996). In weighing Factor (a)(*v*), the probate court considered the length of time of appellee's visitation with AB, acknowledging that in evaluating the permanency of the family unit of a proposed custodial home, the visitation that AB had with appellee counted. The probate court also observed that appellants were consistent in their care for AB. While appellants claim that the probate court should not have weighed this factor equally because of appellee's history of "unstable relationships," the court was commenting more on appellee's efforts to secure time with her daughter, as well as appellee's efforts to achieve the goals set for her by the probate court. While the record is clear that appellee had a prior divorce, she also testified that she had been dating her current boyfriend for almost two years and they had been living together in their home in Kimball together for almost a year. A home study also shows this. While the probate court did not expressly consider this evidence, it was not required to do so. See *Baker*, 411 Mich at 583. However, in reviewing the court's findings on this factor, it is unclear to us in whose favor the court weighed the factor. For example, the probate court merely stated that "it's hard for me to give [this] factor too much . . . weight." Under these circumstances, the probate court's incomplete factual findings on this issue hinders this Court's ability to conduct a meaningful appellate review. On remand, we direct the probate court to state in whose favor this factor weighed, or if neither party, why that is the case.

Appellants also claim that the probate court erred as a matter of law in considering appellee's church attendance when weighing Factor (a)(*vi*), "[t]he moral fitness of the parties involved."[3] As our Supreme Court acknowledged in *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994), addressing the counterpart in the CCA, this factor is relevant to a "person's fitness *as a parent*." Our Supreme Court in *Fletcher*, *id*., further explained:

> To evaluate parental fitness, courts must look to the parent-child relationship and the effect that the conduct at issue will have on that relationship. Thus, the question under factor f is *not* "who is the morally superior adult;" the question concerns the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct. We hold that in making that finding, questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*.

Contrary to appellants' arguments, the probate court did not unduly emphasize appellee's church attendance, stating instead that its focus was the whole individual and their way of living. However, a review of the probate court's analysis, in our view, leads to the conclusion that the court equated an individual who attends church with one that has higher moral fitness, which

---

[3] In their brief on appeal, appellants actually refer to Factor (a)(*vii*), which addresses the parties' mental and physical health. However, it is apparent to us that they were referring to Factor (a)(*vi*), which addresses the parties' moral fitness, MCL 700.5101(a)(*vi*), because it was in the context of this factor that the probate court addressed the issue of church attendance.

according to *Fletcher*, is not an appropriate analytical consideration. Instead, the focus should be on the caregiver-child relationship, and the impact that the conduct at issue would have on the individual's ability to parent. Accordingly, respondents are correct that the court erred as a matter of law in its interpretation and analysis of MCL 700.5101(a)(*vi*).

Appellants also challenge generally the probate court's factual findings that appellants did not support reunification of AB with appellee and that appellee was able to maintain stable employment and housing. Appellants specifically assert that once appellee moved out of their home in December 2021, it was a year before she sought additional visitation with AB beyond supervised contact twice a month that had been already ordered by the probate court. In finding that appellants were not supportive of reunification, the probate court noted that after appellee had made clear her intentions to reunify with AB, appellants sought to adopt the child and withheld parenting time. The probate court also noted that appellants planned to move to Grand Rapids during the court proceedings without telling appellee, and described appellant William Ludwick during his testimony as "begrudging" and "hostile."

The probate court's findings that appellants did not support reunification were supported by the record. For example, William testified that he and appellant Phyllis Ludwick had planned a move to Grand Rapids, and he conceded that neither of them had discussed the matter with appellee for two months after first making their decision. It was only when appellee found out through relatives that appellants were planning to move without her permission that she spoke to Phyllis, and Phyllis told appellee, "we can move wherever we want . . . ." Additionally, the guardian ad litem (GAL) opined at a review hearing that appellants were attempting to thwart AB's participation in family therapy. The GAL also stated that appellee was doing whatever she could to reunify with AB and appellants kept putting up roadblocks, which led the GAL to believe that at some point appellee would need to move for the guardianship to be terminated. Appellee also testified regarding an incident in 2023 in which AB had called William, stating that she wanted to go home after she and appellee had a dispute over putting spinach in a smoothie, and appellee was blindsided when the police arrived at her door after William called them. Considering this evidence in the record, the probate court's determination that appellants were not fully supportive of the reunification of appellee and AB was not clearly erroneous.

Finally, while the probate court did express concern about whether appellee's instability issues would carry into her future, it also acknowledged the great strides she had made to create a safe and stable life for herself and AB. At the time of the evidentiary hearing, appellee was working full-time in an oncology office and working to pay off her child support arrearage. She was living in a rental home with her boyfriend of almost two years, and his children from other relationships also spent time at the couple's home. While appellee's life had been transitory in the past, with appellee first living with her mother, then in other locations before settling in her current residence, the unsettling nature of her then-lifestyle could be attributed in-part to her drug addiction. At the time of the evidentiary hearing she had been clean of drugs for several years. As the probate court acknowledged, the record reflected that appellee had made great strides to change her lifestyle to become a better parent for AB. Therefore, we are not persuaded that the probate court's finding that appellee had achieved a stable lifestyle for AB was clearly erroneous.

To summarize, on remand, the probate court should make findings regarding Factors (a)(*i*) and (a)(*vii*) and where appropriate, either make findings regarding both appellee and appellants,

or state its rationale for not making findings with regard to a party. The probate court also should state, for each of these factors, whether the court has concluded that the factor favors appellee, appellants, both, or neither, and why. With regard to Factor (a)(*v*), the probate court should state whether it concluded that the factor favors appellee, appellants, both, or neither, and why. Lastly, the probate court should reconsider its factual findings with respect to MCL 700.5101(a)(*iii*) and (*vi*), focusing specifically on the subjects described in those factors as construed by applicable Michigan law.

### III. CONCLUSION

We vacate and remand to the probate court for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi

# Court of Appeals, State of Michigan

## ORDER

IN RE GUARDIANSHIP OF AB

Docket No.    372382

LC No.         2013-352608-GM

James Robert Redford
Presiding Judge

Michael J. Riordan

Mariam Saad Bazzi
 Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings.  We retain jurisdiction.  After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal.  Any challenges to the trial court's decisions on remand must be raised in this appeal.  Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal.  The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Appellants must initiate the proceedings on remand within 56 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded.  As stated in the accompanying opinion, the trial court should make additional findings regarding MCL 700.5101(a)(*i*), (*v*), and (*vii*), and reconsider its findings regarding MCL 700.5101(a)(*iii*) and (*vi*). The proceedings on remand are limited to these issues.

The parties must serve copies of their filings in the trial court on this Court.  Appellants must file with this Court copies of all orders entered on remand within seven days of entry.

Appellants must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

August 20, 2025
Date

Chief Clerk